

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

Grover Sellers
WILLIAMSON
**ATTORNEY GENERAL**

Honorable Arthur B. Knickerbocker
The Adjutant General
Austin, Texas

Dear Sir:

Opinion No. 0-6890
Re: Authority of the Governor
to grant deficiency ap-
propriation for the pur-
pose of paying instruct-
ors of the Texas State
Guard.

     Your request for opinion, which has been considered most carefully by this department, reads as follows:

> "The Texas State Guard has been in operation
> since the passage of the Texas Defense Guard Act
> on February 10, 1941. During this time, each
> unit of the Texas State Guard has conducted week-
> ly periods of training. These training periods
> consisted of class room, drill field, and field
> maneuver training, and necessitated considerable
> expense to each unit. This expense amounted to
> approximately $225,000 per year. This cost was
> borne by funds contributed to the units by the
> local, city and county governments, and by indi-
> vidual contributions by the members themselves,
> the Legislature of the State of Texas having ap-
> propriated only $9,000 per year for this purpose.
> Since the cessation of War, local contributions
> to each unit have been reduced to such an extent
> that it is impossible for many of these units to
> continue.

> "The fund made available to the Adjutant Gen-
> eral's Department by the Legislature of the State
> of Texas for the conduction of schools and training
> for the Texas State Guard is Appropriation
> H-7 of the Adjutant General's Department, or Item
> No. 74, referred to on page 26, Supplement to
> Daily and Permanent House Journal, 49th Legisla-
> ture, Regular Session, dated June 1945, and which
> reads as follows:

" 'For transportation, shelter, subsist-
ence, training supplies and training aids
and equipment, including training litera-
ture and all other expenses in organizing
and maintaining schools, including exten-
sion courses and camps of instruction for
enlisted men and officers, either or both.
$9,000.'

"The funds provided for in the above mentioned
appropriation being insufficient to carry on
the proper training necessary to maintain an adequate
internal security force in the State of Texas,
the Governor has consented to the diversion of
$50,000 of his Deficiency Allowance to the Adjut-
ant General's Department for the financing of
this training.

"Each company and detachment of the Texas
State Guard has conducted, in the past, an average
of three schools per month. These schools came
under three different classificiations: schools
for officers, schools for non-commissionedoffic-
ers, and schools for enlisted peronnel in general.
Due to the reduction of contributions by local
agencies to the State Guard, and in order to en-
able each unit to continue these schools, it will
be necessary for the State of Texas to pay a nomin-
al sum to the instructors conducting these schools,
from funds derived from state sources.

"The $50,000 deficiency that would be grant-
ed by the Governor to supplement Item No. H-7 of
The Adjutant General's Department Appropriation,
would not be sufficient to adequately cover this
expense. However, it will supplement the small
amount of funds that the units will be able to ob-
tain from local sources, and will allow these
schools to continue un-interrupted.

"We wish to submit, for your opinion, the
question as to whether or not this Department may
make such payments to the individual instructors
of each unit, from the remaining funds in Appro-
priation No. H-7 of the Adjutant General's Depart-
ment, until these funds are exhausted, and there-
after, make such payments from the deficiency sup-
plement approved for that purpose."

Article III, Section 49, of the Constitution of Texas provides:

"No debt shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repeal invasion, supress insurrection, defend the State in war, or pay existing debts; and the debt created to supply deficiencies in the general revenue shall never exceed in the aggregate at any one time two hundred thousand dollars."

Articles 4351 and 4351a, Revised Civil Statutes, were passed pursuant to such constitutional provision, and read as follows:

"All heads of departments, managers of State institutions or other persons intrusted with the power or duty of contracting for supplies, or in any manner pledging the credit of the State for any deficiency that may arise under their management or control, shall, at least thirty days before such deficiency shall occur, make out a sworn estimate of the amount necessary to cover such deficiency until the meeting of the next Legislature. Such estimate shall be immediately filed with the Governor, who shall thereupon carefully examine the same and approve or disapprove the same in whole or in part. When such deficiency claim, or any part thereof, has been so approved by the Governor he shall indorse his approval thereon, designating the amount and items thereof approved and the items disapproved, and file same with the Comptroller; and the same shall be authority for the Comptroller to draw his deficiency warrant for so much thereof as may be approved; but no claim, or any part thereof, shall be allowed or warrants drawn therefor by the Comptroller, or paid by the Treasurer, unless such estimate has been so approved and filed. If there is a deficiency appropriation sufficient to meet such claims, then a warrant shall be drawn therefor and the same shall be paid; but, if there is no such appropriation, or if such appropriation be so exhausted that it is not sufficient to pay such deficiency claim, then a deficiency warrant shall issue therefor; and such claim shall remain unpaid until provision be made therefor at some session of the Legislature thereafter. The provisions of this article shall not apply to fees

and dues for which the State may be liable under
the general laws. When any injury or damage shall
occur to any public property from flood, storm or
any unavoidable cause, the estimate may be filed
at once but must be approved by the Governor as
provided in this article."

"It shall be lawful for the Governor to ap-
prove deficiency warrants as provided for in Ar-
ticle 4351, Revised Civil Statutes, 1925, to any
amount, the aggregate of which does not exceed
Two Hundred Thousand ($200,000.00) Dollars, for
all purposes for which he is permitted to approve
such deficiency warrants. If any deficiency war-
rants are approved above this amount, such war-
rants are invalid and unredeemable by the State
Treasurer."

It appears that some doubt as to the constitutionality of
Article 4351 was cast by Judge Hawkins in his concurring opinion in
Terrell v. Middleton, 108 Tex. 14, 191 S W. 1138. However, we believe
that its validity has been clearly established as pointed out in Opinion
No. 0-2118, by the consistent administrative practice for over thirty years
under the views of the majority of the Supreme Court that decided the
Middleton case, as well as the implied sanction given the statute by the
Court in Fort Worth Cavalry Club, Inc., v. Sheppard, 135 Tex. 339, 83
S. W. (2d) 660.

"Casual deficiency" in this connection was defined in said
Opinion No. 0-2118 as an unforeseen and unexpected situation which develops
unexpectedly and requires the immediate attention at a time when the
Legislature, the usual authority, is unable to act.

There can be no casual deficiency of revenues, such as we
are considering here, except with respect to those purposes for which the
Legislature has made a specific appropriation. It is unquestioned that the
Legislature did not intend to confer upon the Governor authority to approve
the issuance of deficiency warrants to finance some operation which it had
considered, or might have considered, during its session, and failed or
refused to appropriate money for. This point is aptly illustrated by the
Court of Civil Appeals in the Middleton case, 187 S.W. 367, 372 (writ of
error refused), where it said:

"The appropriation by the Legislature to pay
for the articles, used by the Governor was made
under the guise of covering a deficiency, and ap-
pellant actually contends that Article 3 section
49 of the Constitution, and article 4342, Re-
vised Statutes (now Article 4351), authorize the

Legislature to make provision for the payment of
debts contracted by the Governor for provisions
and other things purchased by him between Legis-
latures. We understand that the rule is that a
state constitution should be liberally construed,
in contradistinction to a strict construction of
the federal Constitution; but it is liberality of
construction running roit when items purchased
for the table, automobile, horses, and library
of the Governor can be ranked as "casual defi-
ciencies of revenue', or 'to repel invasion, sup-
press insurrection, defend the State in time of
war or pay existing debts.' None of these con-
tingencies had arisen, and, in regard to the last
named, the state had contracted no debt, and it
was not in existence. There were no casual defi-
ciencies of revenue to pay for luxuries and nec-
essaries for the household of the Governor, be-
cause no attempt had been made to raise revenue
for that purpose. No provision had been made for
it....."

The following formula was stated in Opinion No. O-2118
to govern the issuance of deficiency warrants:

"Where the Legislature has made a specific
appropriation for a purpose and thereafter there
arises a casual deficiency in the revenues thus
appropriated, the Governor, upon proper applica-
tion therefor by one clothed with the power to
incur such indebtedness on behalf of the State,
may approve a claim for a deficiency warrant to
extend to the next session of the Legislature or
to the beginning of the next fiscal year."

A careful reading of Item No. 74 of the appropria-
tion for the Adjutant General's Department reveals that the payment to an
instructor is within its scope. There can be no question that such pay-
ment is included with the phrase, "all other expenses in organizing
and maintaining schools."

It cannot be questioned that the deficiency in this appropria-
tion was unforeseen and unexpected. At the time the Legislature was in
session, it could not have been foreseen that hostilities would terminate
so soon thereafter, nor could it be anticipated that the various city and
county governments would cease their contributions to the units of the
Texas State Guard at this time.

Article 4351, in defining the officers or agents of the State who

are authorized to create debts on behalf of the State, refers to "all heads of departments, managers of State insitutions or other persons intrusted with the power or duty of contracting for supplies, or in any manner pledging the credit of the State for any deficiency that may arise under their management or control." The Adjutant General is such an officer. Article 5787.

Therefore, it is the opinion of this Department that the Adjutant General may make payments to the individual instructors of each unit from the balance remaining in Item No. 74 (referred to by you as Appropriation No. H-7). It is the further opinion of this department that the Governor, upon proper and timely filing of an estimate as provided in Article 4351, may approve a claim for a deficiency warrant to extend to the meeting of the next Legislature.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By

Arthur L. Moller
Assistant

AIM:db